UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ADVANCE 2000, INC.,

       Plaintiff,

  v.

MATTHEW HARWICK, PAUL BRISGONE,
and CHRISTOPHER S. FRANZ,

       Defendants.

**DECISION AND ORDER**

16-CV-1037S

## I. INTRODUCTION

In this action, Plaintiff Advance 2000, Inc. ("Advance") seeks damages from three present and former employees for breach of fiduciary duty, breach of contract, and unfair competition. Before this Court is Defendants' Motion to Dismiss Advance's complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure. (Docket No. 15.) For the following reasons, Defendants' motion is denied.

## II. BACKGROUND

This Court assumes the truth of the following factual allegations contained in Advance's Amended Complaint and the attached exhibits.[1] See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

---

[1] When determining the sufficiency of a plaintiff's claim for Rule 12 (b)(6) purposes, courts may consider the factual allegations in the complaint, documents attached to the complaint as exhibits or incorporated in it by reference, matters of which judicial notice may be taken, or documents that were either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. Brass v. Am. Firm Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Cortec Ind., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

1

Advance is a corporation created under the laws of New York with offices in Erie County, New York, and Philadelphia, Pennsylvania. (Amended Complaint, ¶ 1.) Advance offers "full-service information technology solutions to businesses, including private cloud computing, network design and implementation, integrated communications, and consulting." (Id., ¶ 8.)

Advance hired Defendant Matthew Harwick as a business development executive in January 2012, pursuant to an agreement made in Erie County, New York. (Id., ¶ 9.) Harwick signed a noncompete and nondisclosure agreement with Advance on January 19, 2012. (Id., ¶ 10.) Harwick resigned from Advance in March 2016. (Id., ¶ 13.)

Advance hired Defendant Paul Brisgone as a senior systems engineer in March 2011. (Id., ¶ 14.) Brisgone signed a noncompete and nondisclosure agreement with Advance on April 4, 2011. (Id., ¶¶ 14-15.) Brisgone was still employed by Advance when the complaint was filed in January 2017. (Id., ¶ 18.)

Advance hired Defendant Christopher Franz as a systems engineer in September 2013. (Id., ¶ 19.) Franz signed a noncompete and nondisclosure agreement with Advance on September 13, 2013. (Id., ¶ 20.) He resigned from Advance in September 2014. (Id., ¶ 23.)

All three defendants were given access to information Advance deemed confidential in its confidentiality agreements. (Id., ¶¶ 11, 16, 21.) From at least May 26, 2015, all three accessed this information and delivered it to one of Advance's competitors. (Id., ¶¶ 24.) At some point, Defendants prepared a business plan for Squidwire group—one of Advance's competitors—that contained information stolen from Advance, which Squidwire used to Advance's detriment. (Id., ¶¶ 26, 29.) Advance also alleges that all

2

three defendants "surreptitiously work[ed] for a competing business group, i.e., Squidwire and its affiliates." (Id., ¶ 6.)

Advance alleges that Harwick disclosed confidential information and entered into transactions with Advance's customers, that Brisgone worked for Advance's clients both while employed at Advance and after his employment, and that Franz assisted others in competition with Advance and participated in a business substantially similar to Advance, within 50 miles of Advance's Philadelphia office. (Id., ¶¶ 36-38).

Advance asserts that Defendants' conduct resulted in its loss of customers, sales, commissions, revenue, labor, and investments, and caused harm to its reputation and goodwill. (Id., ¶¶ 32, 39, 42.) Advance seeks damages from Defendants for breach of fiduciary duty, breach of the noncompete and nondisclosure agreements, and unfair competition. Advance also seeks a permanent injunction enjoining Defendants from using information obtained from Advance, from contacting Advance's customers, and from competing with Advance. It also seeks to compel Defendants to return all information taken.

### III. DISCUSSION

Advance asserts three causes of action against Defendants.

First, Advance alleges that Harwick and Brisgone breached their duty of loyalty to Advance when they took actions to benefit a competitor while still employed by Advance. (Amended Complaint, ¶¶ 30-34.) Second, Advance asserts that all three defendants breached their noncompete and nondisclosure agreements when they worked for, and delivered confidential information to, Squidwire. (Id., ¶¶ 35-39.) Third, Advance alleges that all three defendants unfairly competed with it when they solicited its present and

3

prospective customers and usurped its business opportunities. (Id., ¶¶ 40-45.)

Defendants move to dismiss each of Advance's causes of action for failure to state a claim upon which relief can be granted under Rule 12 (b)(6) of the Federal Rules of Civil Procedure.

**A.    Rule 12 (b)(6)**

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544,127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the

4

defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id.; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

### B. Advance has Stated a Claim for Breach of Fiduciary Duty against Defendants Harwick and Brisgone[2]

Advance alleges that, while Harwick and Brisgone were still paid employees of Advance, they breached their fiduciary duty to Advance by delivering confidential

---

[2] Although the original complaint appears to have brought this claim against all Defendants (Complaint, Docket No. 1-2, ¶¶ 26-29), the amended complaint names only Harwick and Brisgone in this cause of action. (Amended Complaint, Docket No. 10, ¶¶ 31-34.)

5

information to the Squidwire group. Advance alleges that this enabled Squidwire to compete against Advance and caused Advance to lose customers and profits. Defendants argue that dismissal is proper because Advance has not alleged sufficiently specific facts regarding the information allegedly taken.

Under New York law, "it is well settled that an employee owes a duty of good faith and loyalty to an employer in the performance of the employee's duties." Wallack Freight Lines, Inc. v. Next Day Express, Inc., 273 A.D.2d 462, 463, 711 N.Y.S.2d 891 (2000). See also Lamdin v. Broadway Surface Adv. Corp., 272 N.Y. 133, 133 (1936). Pursuant to this duty, "[an employee] is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties. Not only must the employee or agent account to his principal for secret profits but he also forfeits his right to compensation for services rendered by him if he proves disloyal." Lamdin, 272 N.Y. at 138.

An employee's disclosure of employer information, particularly confidential information or trade secrets, can be a breach of this fiduciary duty. See, e.g., Penrose Comput. Marketgroup, Inc. v. Camin, 682 F. Supp. 2d 202, 214-15 (N.D.N.Y. 2010) (finding a breach of fiduciary duty where defendant disclosed information concerning employer's products and services and other confidential information to competitor and used confidential and trade secret information in marketing services to former employee's customers). Other uses of confidential information against the employer's interest can also breach this duty. See Fairfield Fin. Mortg. Grp., Inc. v. Luca, 584 F. Supp. 2d 479, 485 (E.D.N.Y. 2008) (finding "making improper use of the employer's time, facilities or proprietary secrets to create a competing business" to be a breach of fiduciary duty); CBS

6

Corp. v. Dumsday, 268 A.D.2d 350, 353, 702 N.Y.S.2d 248 (1st Dep't. 2000) ("Since plaintiff's claim in this case is that defendants, while in its employ, planned, and later formed, a competing corporation that obtained the Con Edison contract using confidential information, it sufficiently stated a cause of action.").

To state a claim for breach of fiduciary duty, a plaintiff must allege (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages that were directly caused by the defendant's misconduct. Kurtzman v. Bergstol, 40 A.D.3d 588, 590, 835 N.Y.S.2d 644, 646 (2d Dep't. 2007).

Advance alleges that Harwick and Brisgone, as employees, owed it a duty of loyalty, and that, while employed by Advance, they breached this duty by taking and using confidential information in competition against it. (Amended Complaint, ¶¶ 31-32.) Specifically, Advance alleges that Harwick and Brisgone delivered information regarding "Advance 2000's contracts, customers, financial costs, sales data, pricing information, operations and processes, [and] business opportunities" to a competitor, "prepared and delivered a business plan for the Squidwire group," and that the Squidwire group "used the proprietary and confidential information stolen from Advance 2000." (Id., ¶¶ 24, 25, 29.) Advance further alleges that it has suffered damages due to lost customers, sales, commissions, revenue, labor, and investments. (Id., ¶ 32.)

Defendants Harwick and Brisgone argue that dismissal is warranted because Advance has not alleged sufficient facts regarding the information taken, including whether Advance took steps to protect it and how Squidwire used it. (Docket No. 16 at 26-28.) But such detailed pleading is not required by Rule 8. Advance has alleged that Harwick and Brisgone owed it a duty of loyalty, that they breached that duty by disclosing

information Advance considered confidential to, and for the benefit of, a competitor, and that Advance suffered damages due to this breach. This is sufficient to state a claim for breach of fiduciary duty by Harwick and Brisgone.

Accordingly, Defendants' motion to dismiss will be denied as to Advance's breach of fiduciary duty claims against Harwick and Brisgone.

**C.    Advance has Stated a Claim for Breach of Contract against all Defendants.**

To state a breach-of-contract claim under New York law, a plaintiff must allege: (1) the formation of a contract between the parties; (2) performance by the plaintiff; (3) failure of the defendant to perform; and (4) damages. <u>Johnson v. Nextel Commc'ns, Inc.</u>, 660 F.3d 131, 142 (2d Cir. 2011).

Here, Advance alleges that all three defendants breached their noncompete and nondisclosure agreements. Defendants argue that dismissal is warranted because Advance has not alleged sufficient facts to state a claim for breach of these agreements, and because the noncompete provisions are not enforceable under New York law.

**1. Breach of Noncompete Agreements**

**a. Advance has Stated a Claim for Breach of the Noncompete Agreements**

Advance alleges that Defendants breached their noncompete agreements when Harwick and Brisgone serviced Advance customers and clients as employees of Squidwire, and when Franz worked for Squidwire, a company in the same line of business as Advance. Defendants argue that Advance has not alleged sufficient facts to state a claim because it has not alleged that it performed its requirements under the contract, it has not identified the alleged transactions with Advance customers, and it has not shown how Franz's participation in a similar business breached his contract. (Docket No. 16 at

16, 20, 22-23.) Defendants' arguments are unavailing.

Each defendant signed a noncompete agreement with Advance. Harwick agreed that for two years from the date of his agreement, he would not own, manage, operate, join, or participate in the ownership of any business engaged in the same or substantially similar business to that of Advance within 50 miles of any Advance offices. (Docket No. 10-1.) Brisgone agreed that for two years from the termination of his employment, he would not own, manage, operate, join, or participate in the ownership of any business engaged in the same or substantially similar business to that of Advance within 50 miles of Buffalo, New York. (Docket No. 10-2.) Franz's agreement had similar terms, except that it was to run for two years after he left employment at Advance, and it barred work in a similar business within 50 miles of any Advance offices, not only Advance's Buffalo office. (Docket No. 10-4.) Harwick additionally agreed not to enter into transactions with Advance customers, both during his employment and after it, without written approval from an Advance officer. (Docket No. 10-1.) Brisgone additionally agreed not to accept employment or provide individual consulting services to Advance clients that he had worked for while employed by Advance, for two years following the termination of his employment, without written consent from Advance. (Docket No. 10-3.)

Advance alleges the formation of contracts with all three Defendants. (Amended Complaint, ¶¶ 9-10; 14-15; 19-20) Advance alleges its performance of the contract by the fact of its retention of Defendants as employees. (Id., ¶¶ 9, 13, 14, 18, 19, 23.) And it alleges that it suffered damages in the form of lost customers and sales. (Id., ¶ 39.)

In terms of breach, Advance alleges that Squidwire "competes in the same business as Advance." (Amended Complaint, ¶ 24.) Advance further asserts that

9

Defendants worked for Squidwire, a company located in Philadelphia, Pennsylvania, and that Harwick and Brisgone did so without consent from Advance (Id., ¶ 6, 36, 27.) Drawing all reasonable inferences in favor of Advance—including the assumption that competitors service the same group of customers—this suffices to state a claim that Harwick and Brisgone breached their agreements not to work for Advance's customers or clients during or after their employment with Advance. For Franz, this suffices to state a claim that he breached his agreement not to participate in a business engaged in substantially similar business to that of Advance, within 50 miles of Advance's Philadelphia office. Advance has thus alleged sufficient facts to state a claim for breach of Defendants' noncompete agreements.

### b. The Enforceability of the Noncompete Provisions Cannot be Determined at this Stage.

Defendants further argue that the provisions in their noncompete agreements are not enforceable under New York law because they are too temporally and geographically broad.

New York courts view noncompete provisions with caution, because of their impact on employees' ability to work in the future. See Purchasing Assocs v. Weitz, 13 N.Y.2d 267 (1963) ("Since there are powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood, the courts have generally displayed a much stricter attitude with respect to covenants of this type.") In New York, a non-compete agreement is enforceable only if its restrictions are reasonable. BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388 (1999).

The reasonableness of a restraint on future employment is an "intensely fact-based test" that must be determined by looking at all the relevant facts. Nostrum Pharm., LLC v.

Dixit, No. 13 CIV. 8718 CM AP, 2014 WL 4370695, at *6-7 (S.D.N.Y. Sept. 2, 2014). As such, it "does not lend itself to resolution on a motion to dismiss." Id. (holding that a 3-year bar on competing with former employer with respect to products on which defendant worked was not per se unreasonable, barring dismissal of plaintiff's claim).

At this stage, this Court cannot find that the noncompete provisions Defendants challenge are unreasonable as a matter of law. A two-year non-compete provision is not outside the norm in New York, nor are some geographic restrictions on servicing a former employer's clients. See, e.g., BDO Seidman, 93 N.Y.2d at 388 (18-month restriction on servicing clients an accountant had actually serviced while working for former employer was reasonable); Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 507 (S.D.N.Y. 2011) (10-year worldwide restriction on defendants accepting any job in the fitness industry involving obstacle courses or using the term "boot camp" was unreasonable because likely render defendants unable to make a living); Johnson Controls, Inc. v. A.P.T. Critical Sys, Inc., 323 F. Supp. 2d 525, 534 (S.D.N.Y. 2004) (1-year restriction was reasonable, as long as provisions applied only to a limited, identifiable group of plaintiff's clients and potential clients in a reasonably limited area); Unisource Worldwide, Inc. v. Valenti, 196 F. Supp. 2d 269, 277 (E.D.N.Y. 2002) (2-year restriction was reasonable, but if applied to all the areas in the country where the employer had offices was not reasonable).

The reasonableness, and therefore the enforceability, of Defendants' noncompete provisions must be decided after an "intensely fact-based" inquiry. Nostrum, 2014 WL 4370695, at *6-7. The enforceability of the contract provisions at issue here thus cannot be decided at this stage.

For the foregoing reasons, Defendants' Motion to Dismiss Advance's breach of noncompete contract claims will be denied.

### 2. Breach of Nondisclosure Agreements

Advance alleges that all three Defendants breached their nondisclosure agreements by giving information identified as confidential in the agreements to Advance's competitor. Defendants argue that Advance has not stated a claim because it does not identify what information Plaintiff allegedly provided to Defendants, what information Defendants disclosed, to whom Defendants disclosed the information, and whether such information is protected under New York law. These arguments fail.

To allege a breach of a confidentiality agreement, a Plaintiff must allege (1) the formation of a contract, (2) performance by the plaintiff, (3) failure of the defendant to perform, and (4) damages. See Nextel, 660 F.3d at 142.

Defendants agreed not to disclose any confidential information belonging to Advance. (Docket No. 10-1, 10-2, 10-3.) Confidential information is defined in their nondisclosure agreements to include information relating to customer lists, price lists, customer service requirements, cost of providing service and equipment, and equipment maintenance costs. (Id.) Brisgone additionally agreed not to disclose "any of the Company's contracts, the name of its customers, its financial costs, sales data, processes, business opportunities and any other information deemed proprietary information by the company." (Docket No. 10-2.)

Advance alleges that Harwick was given access to pricing information, sales history, customer contact information, operation information; Brisgone to call centers, network configurations, computer network architecture, integration of technologies; and

12

Franz to product offerings, pricing arrangements, management infrastructure. (Amended Complaint, ¶¶ 11, 16, 21). Advance further alleges that Defendants disclosed "information concerning Advance 2000's contracts, customers, financial costs, sales data, pricing information, operations and processes, business opportunities" to a competitor of Advance, that Defendants "prepared and delivered a business plan for the Squidwire group," and that the Squidwire group used the "confidential information stolen from Advance." (Id., ¶¶ 24, 26, 29.) Advance further alleges damages. (Id., ¶ 39.)

This Court finds Advance's allegations sufficient to state a claim for breach of Defendants' agreements not to disclose such information. Again, Rule 8 does not require allegations at the specificity level sought by Defendants. Defendants' motion to dismiss the claims for breach of the nondisclosure agreements will therefore be denied.

**D.    Advance has Stated a Claim for Unfair Competition against all Defendants.**

Advance alleges that all three defendants unfairly competed with it when they solicited its present and prospective customers and usurped its business opportunities. (Amended Complaint, ¶ 41.) Defendants argue that dismissal is proper because Advance has not alleged sufficient facts regarding what information Defendants misappropriated, how that information is being used, and how Defendants are in competition with Advance. (Docket No. 16 at 30.) Defendants' arguments are unavailing.

New York's law of unfair competition is a "broad and flexible doctrine that depends more upon the facts set forth . . . than in most causes of action. It has been broadly described as encompassing any form of commercial immorality, or simply as endeavoring to reap where one has not sown; it is taking the skill, expenditures and labors of a competitor, and misappropriati(ng) for the commercial advantage of one person . . . a

13

benefit or property right belonging to another." Roy Export Co. Establishment v. CBS, Inc., 672 F.2d 1095, 1105 (2d Cir. 1982) (internal citations and quotation marks omitted).

The basic issue in a cause of action for unfair competition is "whether the acts complained of are fair or unfair." Cigogne, Inc. v. Luxury Trading Corp., 13 A.D.2d 928, 929 (App. Div. 1st Dep't). This is necessarily a fact-intensive inquiry. Bytemark, Inc. v. Xerox Corp., 342 F. Supp. 3d 496, 505 (S.D.N.Y. 2018) ("New York's unfair competition law is a broad and flexible doctrine that depends more upon the facts set forth ... than in most causes of action.") (internal quotations omitted).

To state an unfair competition claim involving misappropriation, a plaintiff must allege that the defendant: (1) "misappropriated the plaintiff[ ]'s labors, skills, expenditures, or good will"; and (2) "displayed some element of bad faith in doing so." Abe's Rooms, Inc. v. Space Hunters, Inc., 38 A.D.3d 690, 692, 833 N.Y.S.2d 138, 140 (App. Div. 2d Dep't 2007); see also Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir.1980).

Information protected from misappropriation can be trade secrets or other confidential information. Innovative Networks v. Satellite Airlines Ticketing Ctrs., 871 F.Supp. 709, 730 (S.D.N.Y.1995) ("Courts in this circuit have held that [where the information taken would not otherwise qualify as a trade secret,] the unauthorized physical taking and exploitation of internal company documents for use in a competitor's business constitutes unfair competition."); see also Continental Dynamics Corp. v. Kanter, 64 A.D.2d 975, 408 N.Y.S.2d 801, 802 (2d Dep't 1978) ("[W]here customer lists do not rise to the level of trade secrets, an employee's 'physical taking' or 'studied copying' of such lists may, nevertheless, form the basis for a cause of action for unfair competition.");

Fairfield Fin., 584 F. Supp. 2d at 487 ("The unauthorized taking of [a confidential customer list and other internal documents] may support a claim for unfair competition.").

Here, Advance has alleged sufficient facts to state a claim. Advance alleges that "defendants have engaged, and continue to engage, in commercial activities with the intent to solicit customers of Advance 2000, to compete unfairly with Advance 2000, and to usurp business opportunities from Advance 2000 regarding prospective customers . . . to Advance 2000's detriment." (Amended Complaint, ¶ 41.) To do this, Advance alleges that Defendants took its customer lists, financial and sales data, and pricing information, among other things, and gave this information to a competitor for whom Defendants subsequently worked. (Id., ¶¶ 24, 29). This suffices to state a claim for misappropriation of Advance's property.

Defendants' motion to dismiss will therefore be denied as to the unfair competition claims.

**E.    There is No Duplication of Claims**

Defendants further argue that Advance's claims for breach of fiduciary duty and unfair competition are duplicative of its breach-of-contract claims, and must therefore be dismissed. This argument is unavailing.

Under New York law, claims of breach of fiduciary duty that merely duplicate contract claims must be dismissed. See, e.g., William Kaufman Org., Ltd. v. Graham & James LLP, 703 N.Y.S.2d 439, 442 (1st Dep't 2000); Morgan v. A.O. Smith Corp., 697 N.Y.S .2d 152, 152 (2d Dep't 1999). Similarly, "[c]ourts have dismissed unfair competition claims for duplicating breach of contract claims." Amphenol Corp. v. Paul, No. 3:12 Civ. 543 (AVC), 2013 WL 12251356, at *7 (D. Conn. Mar. 28, 2013).

But conduct constituting a breach of contract may be actionable in tort if "a legal duty independent of the contract itself has been violated." Nostrum, 2014 WL 4370695, at *13. This duty can arise from the contract or from another source. Mandelblatt v. Devon Stores, 521 N.Y.S. 2d 672, 676 (1st Dep't 1987) ("The same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself."); see also Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC., 376 F.Supp.2d 385, 408 (S.D.N.Y. 2005) ("Such a duty may be independent of a contract and yet emerge from a relationship of trust and confidence created by a contract, as in the case of a lawyer and client."); La Barte v. Seneca Res. Corp., 285 A.D.2d 974, 976–77, 728 N.Y.S.2d 618 (2001) ("This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract."); Penrose, 682 F. Supp. 2d at 214–15 (finding a claim for both breach of fiduciary duty and breach of contract where the plaintiff alleged both that the defendant used his knowledge and skills to compete against the plaintiff and that the defendant used confidential trade secret information in violation of the non-disclosure agreement to compete).

An employee's fiduciary duty to his employer arises from the employer-employee relationship, not necessarily out of any specific contractual provisions. See Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 569 (S.D.N.Y. 1984), aff'd, 761 F.2d 93 (2d Cir. 1985) ("It cannot be disputed, however, that an employee has a fiduciary duty that exists independent of any contract between the parties to refrain from such conduct in certain circumstances.") Defendants' fiduciary duties may have been broader than their

16

obligations under Advance's noncompete and nondisclosure agreements, because an employee is "prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." Lamdin, 272 N.Y. at 138. Advance alleges that defendants Harwick and Brisgone worked against Advance's interests and assisted a competitor while employed by Advance. This conduct would violate their fiduciary duty of loyalty, which exists apart from any contractual obligations, and therefore suffices to state a claim separate from Advance's breach-of-contract claims. Nostrum, 2014 WL 4370695, at *13.

Similarly, the tort of unfair competition encompasses more than a contractual duty. See, e.g., Reed Const. Data Inc. v. McGraw-Hill Cos., Inc., 745 F.Supp.2d 343, 353 (S.D.N.Y. 2010) (denying motion to dismiss because the defendant's "use of deceit to access ... and steal the [the plaintiff's] confidential information and its subsequent use of that information to compete with [the plaintiff] spring from circumstances extraneous to and not constituting elements of the subscription agreements," and violated a legal duty independent of the agreements—namely, "the duty not to misappropriate the property of another") (internal quotation marks omitted); Amphenol Corp. v. Paul, 591 F. App'x 34 (2d Cir. 2015) (summary order) ("In the unfair competition claim, Amphenol has not simply reasserted that 'Paul has breached and/or inevitably will breach the terms of the [Intellectual Property Agreement] and/or Shareholder's agreements.' Rather, the complaint relies upon Paul's fraudulent and deceptive misappropriation of Amphenol's confidential information without centering on the contractual dispute between the parties. There are two distinct causes of action here.").

Advance alleges that Defendants took its confidential information and used it to

17

benefit a competitor for whom they later worked. This alleges conduct beyond a simple breach of the provisions of the nondisclosure agreement, because it involves an element of bad faith. See Bytemark, 342 F. Supp. 3d at 509 ("These allegations of wrongful conduct extraneous to the Confidentiality Agreements are sufficient to suggest 'that [the Xerox Entities] ha[ve] done more than simply fail to comply with the terms of the agreement[s], but rather ha[ve] undertaken affirmative steps to intentionally harm [Plaintiff.]'"); see also Reed Const. Data, 745 F.Supp.2d at 353 (denying motion to dismiss because defendant's use of stolen information to compete with plaintiff "spr[a]ng from circumstances extraneous to" nondisclosure agreement, and violated a legal duty independent of the agreement – namely, "the duty not to misappropriate the property of another")(citations omitted).

Consequently, this Court finds that the unfair competition and breach-of-contract claims are not duplicative. Defendants' Motion to Dismiss on this basis will therefore be denied.

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss each of Advance's claims is denied. Defendants will have 14 days from the entry date of this decision to file an answer to the amended complaint consistent with Rule 12(a)(4)(A).

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 15) is DENIED.

FURTHER, that Defendants shall file an answer to the amended complaint within 14 days of the entry date of this decision consistent with Rule 12(a)(4)(A).

SO ORDERED.

Dated:　　December 11, 2019
　　　　　　Buffalo, New York

　　　　　　　　　　　　　　　　　　　　s/William M. Skretny
　　　　　　　　　　　　　　　　　　　　WILLIAM M. SKRETNY
　　　　　　　　　　　　　　　　　　　　United States District Judge